UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PENTAIR, INC.,<br>a Minnesota corporation,<br><br>     Plaintiff,<br><br>v.<br><br>WISCONSIN ENERGY CORPORATION,<br>a Wisconsin corporation,<br><br>     Defendant. | Case No. 07-CV-3521 (PJS/JJK)<br><br>ORDER DENYING MOTION FOR<br>SUMMARY JUDGMENT |

  Stuart T. Williams, Bruce C. Recher, and Wesley T. Graham, HENSON & EFRON, P.A., for plaintiff.

  Richard B. Allyn and Gerardo Alcazar, ROBINS, KAPLAN, MILLER & CIRESI L.L.P.; and R. Ryan Stoll, SKADDEN, ARPS, SLATE, MEAGHER & FLOM L.L.P., for defendant.

  In July 2004, plaintiff Pentair, Inc. ("Pentair") purchased Wicor, Inc. ("Wicor"), a subsidiary of defendant Wisconsin Energy Corporation ("WEC"). In Count II of its complaint — the only count that has not been dismissed[1] — Pentair alleges that WEC breached an express warranty about the accuracy of Wicor's financial statements. This matter is before the Court on WEC's motion for summary judgment on Count II. For the reasons set forth below, the motion is denied.

---

[1] Pentair's complaint contains four claims. The Court previously dismissed Count I, another breach-of-warranty claim, as time-barred. *See* Docket No. 19 at 8. Pentair voluntarily dismissed Count III, *see* Docket No. 19 at 4, and the parties later settled Count IV, *see* Docket No. 41 at 1 n.1.

# I. BACKGROUND

Pentair's purchase of Wicor is documented in a written stock-purchase agreement between Pentair and WEC, dated February 3, 2004 ("Agreement"). *See* Berglund Decl. Ex. A, Sept. 7, 2007 [Docket No. 7] (hereinafter "Agreement § ___"). Pursuant to the Agreement, Pentair purchased all shares of Wicor. Compl. ¶ 7. The stock sale closed effective July 31, 2004. Compl. ¶ 8.

The Agreement included a number of warranties relating to Wicor's financial health. Among other things, WEC provided a warranty that applied specifically to Wicor's employee-benefit plans, which the Agreement referred to as "Employee Plans/Agreements." Agreement § 3.16(a). WEC warranted that, with certain exceptions not relevant here, "all payments due from [each] Employee Plan/Agreement . . . have been made, and all amounts properly accrued to date as Liabilities that have not been paid have been properly recorded on the books of [Wicor] . . . ." Agreement § 3.16(f).

In Count II of its complaint, Pentair alleges that WEC breached § 3.16(f) of the Agreement. Specifically, Pentair alleges that, in calculating Wicor's worker's-compensation reserve, WEC failed to account for incurred, but unreported, claims and associated expenses, in violation of various financial-accounting standards. Compl. ¶ 10. According to Pentair, WEC understated Wicor's worker's-compensation reserve by over $6 million. As a result of this alleged breach, Pentair claims to have suffered damages exceeding $6 million. WEC now moves for summary judgment on this claim.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B. Applicable Law

The Agreement provides, and the parties agree, that Wisconsin law governs the interpretation and enforcement of the Agreement. Agreement § 12.5. In determining the law of any state, this Court must follow the decisions of that state's highest court. *See Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008). When a state's highest court has not spoken on a particular issue, this Court must predict how the state's highest court would decide the issue and "may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *Id.* (citation and quotations omitted; omission in original).

WEC makes the interesting argument that, in determining Wisconsin law, this Court is bound not only by the decisions of the Wisconsin Supreme Court, but also by the published decisions of the Wisconsin Court of Appeals. In support of this argument, WEC cites Wis. Stat. § 752.41(2), which provides that "[o]fficially published opinions of the court of appeals shall have statewide precedential effect."

The Court disagrees. To begin with, the Court doubts that § 752.41(2) stands for anything more remarkable than the proposition that a published decision of the Wisconsin Court of Appeals is binding on all Wisconsin courts of equal or lesser authority unless it is overturned by the Wisconsin Supreme Court. The Seventh Circuit, however, has apparently read § 752.41(2) to mean that the published opinions of the Wisconsin Court of Appeals bind federal courts on matters of Wisconsin law to the same extent as the opinions of the Wisconsin Supreme Court. *See Cole v. Young*, 817 F.2d 412, 416 (7th Cir. 1987); *see also Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1406 (7th Cir. 1994).[2]

This seems like an odd way to read the statute, and, as a later Seventh Circuit case makes clear, this approach is inconsistent with a federal court's role in a diversity case. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633-37 (7th Cir. 2002) (holding that federal district courts are not bound by an Illinois rule requiring Illinois trial courts to follow the decisions of the relevant Illinois intermediate appellate court). As a matter of internal judicial administration,

---

[2]*Cole* and *Fittshur* are the only Seventh Circuit cases that cite § 752.41(2). In more recent cases applying Wisconsin law, the Seventh Circuit has followed the traditional approach of treating intermediate appellate opinions as persuasive, but not binding, authority. *See Howard v. Philip Morris USA, Inc.*, 98 Fed. Appx. 535, 538 (7th Cir. 2004) (stating that the court's task, in applying Wisconsin substantive law, was to predict how the state's highest court would resolve the case, giving great weight to the holdings of the state's intermediate appellate courts).

states are certainly free to make the decisions of their intermediate appellate courts binding on their own trial courts. But the task of a federal court sitting in diversity is not to imitate a state trial court; rather, it is to predict the ultimate rule of law that would have emerged had the case been litigated through the state system. *See id.* at 635.

A federal court's performance of this task must account for the fact that, unlike a state litigant, a federal litigant normally has no opportunity to ask for a definitive ruling from the state's highest court.[3] If federal courts were bound by the rulings of intermediate state courts, federal litigants would in most cases be denied "any opportunity to receive a judicial assessment about what the supreme court of the state might determine the law to be through a resolution of conflicting precedent in the lower state appellate courts." *Id.* For this reason, § 752.41(2) cannot be construed to require a federal court to be bound by the decisions of the Wisconsin Court of Appeals. The Court will therefore follow the traditional approach of treating the decisions of Wisconsin's intermediate appellate courts as persuasive, but not binding, authority.

## C. WEC's Motion

For purposes of its motion, WEC does not dispute that it made a warranty, that it breached the warranty, and that Pentair suffered damages as a result of WEC's breach. Instead,

---

[3]Wisconsin does not permit federal district courts to certify questions of state law to the Wisconsin Supreme Court. *See Forest County Potawatomi Cmty. of Wis. v. Doyle*, 803 F. Supp. 1526, 1534 (W.D. Wis. 1992) ("Certification is not an option that is available to federal district courts in this state."). Wisconsin does permit certification by federal appellate courts, but only when there is "no controlling precedent" in the decisions of *either* the Wisconsin Supreme Court *or* the Wisconsin Court of Appeals. Wis. Stat. § 821.01. Thus, if the Wisconsin Court of Appeals has spoken on a question, neither a federal district court nor a federal appellate court may certify that question to the Wisconsin Supreme Court.

WEC moves for summary judgment on the basis that Pentair had full knowledge of WEC's breach before the deal closed.[4]

According to WEC, Pentair's knowledge is relevant in two ways. First, WEC argues that Pentair's knowledge of the breach means that Pentair cannot prove that it *relied* on the warranty, and, according to WEC, Pentair cannot recover for breach of warranty unless it can prove reliance. Second, WEC argues that, because Pentair proceeded with the transaction despite its knowledge of WEC's breach, Pentair waived that breach. The Court considers each argument in turn.

1. Reliance

Whether Wisconsin requires proof of reliance as an element of a breach-of-warranty claim is a difficult question. Judicial opinions are not clear, and it is impossible to discern a general principle that is not contradicted at least to some extent by some language in some opinion. But having carefully examined the relevant case law, the Court concludes that whether reliance is an element of a breach-of-warranty claim under Wisconsin law depends on whether the parties have expressly agreed that a particular factual representation constitutes a warranty.

If the seller merely makes a factual representation (e.g., "this car has four new tires") — but the seller does not go further and expressly agree that his representation is a warranty (e.g., "I hereby warrant that this car has four new tires") — the buyer cannot recover for breach of warranty unless she can prove that she relied on the factual representation. Wisconsin has long followed the rule, later incorporated into the Uniform Sales Act, that a seller's representation

---

[4]Pentair denies that it knew of WEC's breach before closing. As discussed below, however, the Court concludes that whether Pentair knew of the breach is irrelevant.

about the quality of goods does not become an enforceable warranty unless the buyer relied on the representation. *Neave v. Arntz*, 14 N.W. 41, 42 (Wis. 1882) (explaining that statements about the quality of the goods "will be regarded as a warranty if relied upon by the purchaser in making the purchase"); *Acme Equip. Corp. v. Montgomery Coop. Creamery Ass'n*, 138 N.W.2d 729, 731 (Wis. 1966) (quoting the Uniform Sales Act, which stated that "[a]ny affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon").[5]

But if the seller has expressly agreed that his representation is a warranty, the buyer may recover for breach of that warranty even if she did not rely on it — that is, even if she knew or had reason to know that the factual representation being warranted was not true. The Wisconsin

---

[5]It is possible that, at least in cases governed by the Uniform Commercial Code (which superseded the Uniform Sales Act), the Wisconsin Supreme Court no longer requires a showing of reliance before treating a seller's representation of fact as an enforceable warranty. In *Ewers v. Eisenzopf*, the Court noted that "[t]he official Uniform Commercial Code Comments to § 2-313 explains that the seller's intent to establish a warranty and the buyer's reliance on the affirmation are not determinative as to whether the representation is a basis of the bargain." 276 N.W.2d 802, 805 (Wis. 1979). Although this language from *Ewers* suggests that reliance may not be required under the UCC, other language in *Ewers* leaves the matter unclear. *See id.* (quoting UCC comments stating that "no particular reliance on such statements need be shown," but then quoting language from a Third Circuit case stating that the "true test is . . . whether [the seller] made an affirmation of fact the natural tendency of which was to induce the sale and which did in fact induce it") (citations and quotations omitted).

WEC notes that there are two recent cases from the Wisconsin Court of Appeals that continue to require a showing of reliance to turn a representation into a warranty. *See Malzewski v. Rapkin*, 723 N.W.2d 156, 161 (Wis. Ct. App. 2006); *Selzer v. Brunsell Bros., Ltd.*, 652 N.W.2d 806, 820-22 (Wis. Ct. App. 2002). But both *Malzewski* and *Selzer* derive the reliance requirement from *Acme Equipment Corp.*, which was decided under the Uniform Sales Act. Whether reliance is an element under the UCC is thus not clear. The issue is irrelevant to this case, though, because WEC expressly agreed to be bound by a warranty, and, as discussed below, under Wisconsin law such a warranty can be enforced even in the absence of reliance.

Supreme Court long ago explained that reliance is not required where parties have themselves made it clear that a factual representation is a warranty that was given as part of the contract for sale:

> It is true that if an express warranty had been given in express terms as a part of the contract of sale, *no proof of reliance thereon would have been necessary*. Shordan v. Kyler et al., 87 Ind. 38; Harrington v. Smith, 138 Mass. 92; Nauman v. Ullman, 102 Wis. 92, 78 N. W. 159. But where a mere representation of fact is proved, as in the case before us, it must be shown to have been relied upon by the vendee in order to constitute a warranty. Hoffman v. Dixon, 105 Wis. 315, 81 N. W. 491, 76 Am. St. Rep. 916.

*Smith v. Reed*, 124 N.W. 489, 491 (Wis. 1910) (emphasis added). *Smith* thus distinguishes between two types of warranties: (1) a warranty that is created when "a mere representation of fact" is "relied upon by the [buyer]," and (2) an "express warranty . . . given in express terms as a part of the contract of sale." Again, the former type of warranty does not even exist unless the buyer proves reliance; the latter type of warranty not only exists, but can be enforced, whether or not it was relied upon.

There is no dispute that this case involves the latter type of warranty. In the parties' written agreement, WEC expressly warranted to Pentair that, with respect to "Employee Plans/Agreements," "all payments due from [each] Employee Plan/Agreement . . . have been made, and all amounts properly accrued to date as Liabilities that have not been paid have been properly recorded on the books of [Wicor] . . . ." Agreement § 3.16(f). Because this statement is indisputably an "express warranty . . . given in express terms as a part of the contract of sale," *Smith* instructs that no proof of reliance is necessary.

WEC argues that the distinction in *Smith* between the two types of warranties is dicta, as is *Smith*'s statement that reliance is not necessary to recover for breach of an express warranty given as part of a sales contract. But in resolving an unsettled question of state law, the Court may consider dicta if it is a reliable guide to determining how the state's highest court would decide an issue. Here, the Court finds the dicta in *Smith* to be a reliable guide — both because it makes sense in light of the Wisconsin Supreme Court's embrace of the economic-loss doctrine, and because the distinction drawn in *Smith* between "mere representation[s] of fact" and "express warrant[ies] . . . given in express terms as a part of the contract of sale" is generally borne out by subsequent Wisconsin case law.

Under the economic-loss doctrine, purchasers may not rely on tort law to recover for economic losses caused by defective goods. Instead, a purchaser's right to recover for such losses is strictly a matter of contract: "The duty to provide a product which functions to certain specifications is contractual. If a commercial purchaser wants a machine of higher quality, [or] better durability or one with a better warranty, the purchaser is free to negotiate in the marketplace." *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 437 N.W.2d 213, 215 (Wis. 1989).

The purpose of this economic-loss doctrine is threefold:

> (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.

*Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842, 846 (Wis. 1998). An express contractual warranty — such as the warranty in the Pentair-WEC Agreement — is one way for a

purchaser to allocate or insure against economic risk. As the Wisconsin Supreme Court has explained, such a warranty "amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *Dittman v. Nagel*, 168 N.W.2d 190, 193 (Wis. 1969) (citation and quotations omitted).[6] *See also Daanen & Janssen*, 573 N.W.2d at 846 ("From its inception the economic loss doctrine has been based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena.").

As other courts have recognized, the reliance requirement in a breach-of-warranty claim (a claim that sounds in contract) mirrors the reliance requirement in a fraud claim (a claim that sounds in tort) and is a holdover from a time when breach-of-warranty actions were seen as

---

[6]Both parties claim that *Dittman* supports their position because it adopted the following definition of "warranty" found in the *Corpus Juris Secundum*:

> A "warranty" is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself, and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue.

*Dittman*, 168 N.W.2d at 193 (citation and quotations omitted). WEC focuses on the phrase "upon which the other party may rely," contending that it means that reliance is a necessary element of a breach-of-warranty claim. But that phrase does not require proof of reliance to recover for breach of warranty; rather, as the language following the phrase makes clear, it merely means that the buyer is not required to conduct her own investigation of any fact warranted to be true. As Pentair points out, other jurisdictions adopting this definition do not require proof of reliance to recover for breach of warranty. *See CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1000-01 (N.Y. 1990). Moreover, nothing in the rest of the *Dittman* opinion suggests that reliance is a necessary element; in fact, the court recited the elements of a breach-of-warranty claim without making any reference to reliance: "The burden of proof is on the party relying upon a breach of warranty to show the warranty, the breach thereof, and that his loss resulted from the breach of such warranty." *Dittman*, 168 N.W.2d at 196 (citation and quotations omitted).

grounded in tort. *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1000 (N.Y. 1990). It would be odd, to say the least, for courts to instruct that purchasers should rely on contract rather than tort law to allocate their economic risk, but then bar those same purchasers from recovering under their bargained-for warranties when they cannot prove an element derived from tort law. Indeed, it would be inconsistent with the Wisconsin Supreme Court's stated goal of maintaining the fundamental distinction between contract and tort law and protecting parties' freedom to allocate economic risk by contract.

This is not to say that the reliance requirement has no place in warranty law. In the context of a simple sale of goods that takes place at a retail store, for example, the reliance requirement can be a useful mechanism for determining whether a factual representation made by the sales clerk was, in fact, a part of the parties' (unwritten) contractual bargain. *Cf. Hoffman v. Dixon*, 81 N.W. 491, 492-93 (Wis. 1900) (sales clerk's statement that seed was of a particular type was a warranty); *Ewers v. Eisenzopf*, 276 N.W.2d 802, 805 (Wis. 1979) (sales clerk's statement that sea shells were suitable for use in a saltwater aquarium was a warranty). But in this case, the parties and their teams of lawyers undertook a complex, multimillion dollar transaction after carefully negotiating a fifty-page written agreement. The parties' contractual relationship, including the existence and scope of express warranties, is exhaustively detailed in that written agreement. Under these circumstances, *Smith*'s statement that reliance is not necessary makes perfect sense. There is no reason to require Pentair to prove reliance in order to prove that WEC's written warranties were a part of the parties' bargain; the parties themselves have made it clear that WEC's warranties were a part of their bargain.

Of course, if a long line of subsequent Wisconsin cases were at odds with the dicta in *Smith*, the Court could not regard *Smith*'s dicta as a well-founded explication of Wisconsin law, no matter how logical that dicta might be. But no such line of cases exists. To the contrary, the distinction drawn in *Smith* has, for the most part, been borne out in subsequent Wisconsin cases.

On the one hand, when a representation was not "an express warranty . . . given in express terms as a part of the contract of sale," Wisconsin courts have generally required the plaintiff to show reliance on the representation.[7] *See Acme Equip. Corp. v. Montgomery Coop. Creamery Ass'n*, 138 N.W.2d 729, 732 (Wis. 1966) (holding that, under the Uniform Sales Act, the buyer's reliance on the seller's representation created an express warranty); *Hellenbrand v. Bowar*, 114 N.W.2d 418, 422 (Wis. 1962) (no express warranty was made where the buyer did not rely on any statement of the seller); *Borg v. Downing*, 266 N.W. 182, 184 (Wis. 1936) ("although neither the word 'warranty' or 'guaranty' was used by the defendant . . . , there was evidence of sufficient affirmation by the defendant that he would obtain good soft water for plaintiff to constitute, upon the latter's reliance thereon, as binding an express contract of warranty as if the defendant had used the most formal and unequivocal language on that subject"); *Kimball-Clark Co. v. Crosby*, 185 N.W. 172, 174 (Wis. 1921) (holding that a purchaser could not recover for breach of warranty where property was sold "as it stands" and the purchaser conducted his own inspection of it); *Hoffman v. Dixon*, 81 N.W. 491, 492 (Wis. 1900) ("[a]n affirmation of the fact as to the kind or quality of an article offered for sale, of which the

---

[7]As noted earlier, it is possible that the Wisconsin Supreme Court would no longer require proof of reliance under the UCC. But because this case is not governed by the UCC — and, in any event, involves the type of express warranty for which reliance is not required — the Court need not resolve that issue.

vendee is ignorant but upon which he relies in purchasing such article, is as much a binding contract of warranty as a formal agreement"); *White v. Stelloh*, 43 N.W. 99, 100 (Wis. 1889) (explaining that statements about the quality of the goods are regarded as warranties if they were relied on by the purchaser), *Neave v. Arntz*, 14 N.W. 41, 42 (Wis. 1882) (explaining that statements about the quality of the goods "will be regarded as a warranty if relied upon by the purchaser in making the purchase"); *Selzer v. Brunsell Bros., Ltd.*, 652 N.W.2d 806, 820-22 (Wis. Ct. App. 2002) (holding that plaintiff had offered sufficient evidence to withstand summary judgment concerning whether statement of fact in a catalog was a warranty because the plaintiff's architect relied on the statement in selecting the product).

On the other hand, when there was little or no dispute that the representation was in fact a warranty — where the warranty was, in *Smith*'s terms, "an express warranty . . . given in express terms as a part of the contract of sale" — Wisconsin courts have generally not asked whether the plaintiff relied on the warranty. *See Dittman v. Nagel*, 168 N.W.2d 190, 192-96 (Wis. 1969) (analyzing case involving written warranty under which "seller warrants the well . . . to be of sufficient depth and produces an adequate supply of water for human consumption" without requiring proof of reliance); *Jones v. Holland Furnace Co.*, 206 N.W. 57, 58-59 (Wis. 1925) (analyzing case involving written warranty that "expressly guarantees and warrants" that a furnace would give good heating service without requiring proof of reliance); *Nauman v. Ullman*, 78 N.W. 159, 159-60 (Wis. 1899) (cited in *Smith*) (where there was little dispute that a warranty was made, treating the issue of the buyer's potential knowledge of a defect as a possible waiver of the warranty rather than as the lack of an essential element of the buyer's claim); *Woodward Commc'ns, Inc. v. Shockley Commc'ns Corp.*, 622 N.W.2d 756, 759-62 (Wis. Ct. App. 2000)

(analyzing case involving written warranty requiring seller to keep property in good repair without requiring proof of reliance).

It is true that this distinction can become somewhat muddled at times. As the citations above demonstrate, there are a great many breach-of-warranty cases involving the issue of whether a representation was a warranty. Consequently, there are a great many breach-of-warranty cases that mechanically recite that the "elements of an express warranty are (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance by the buyer." *Malzewski v. Rapkin*, 723 N.W.2d 156, 161 (Wis. Ct. App. 2006). Without carefully reading these cases and comparing them to cases (such as this one) in which there is no dispute that an express warranty exists, it is easy to read such language as setting forth the elements that must be proved in order to recover for *any* breach of warranty rather than the elements necessary to prove that a factual representation *is* a warranty.

Another source of confusion lies in the fact that the lack of reliance that precludes a representation from being considered a warranty is conceptually related to a buyer's knowledge of a breach — knowledge that can result in a waiver of the buyer's claims. Thus, courts are sometimes less than meticulous in distinguishing between lack of reliance on a representation (an issue related to reliance) and knowledge that a representation is untrue (an issue related to waiver). *See Malzewski*, 723 N.W.2d at 161-62 (stating that the plaintiffs' reliance was unreasonable, but then stating that the plaintiffs waived their right to pursue a contractual warranty claim by waiving their right to an inspection and proceeding with the purchase even though they knew of a potential defect); *Lambert v. Hein*, 582 N.W.2d 84, 89-92 (Wis. Ct. App. 1998) (stating that the trial court had to determine whether the plaintiffs justifiably relied on any

warranties, but then holding that the plaintiffs waived any warranty claims by proceeding with the transaction when they knew of the defect); *see also Hlubocky v. Schramel*, 279 N.W. 637, 639-40 (Wis. 1938) (holding that buyer's knowledge of breach precluded recovery without explaining whether buyer had failed to prove an element of his claim or instead had waived the breach). In most cases, the distinction between these two concepts makes no practical difference, and thus courts can be forgiven for failing to be precise. As discussed below, however, the distinction does make a difference in this case.

Finally, the ability of courts to consistently recognize and express the distinction described in *Smith* is hampered by the fact that, in cases on both sides of the divide, the warranty in question is labeled as "express." But as *Smith* makes clear, there are express factual representations that may or may not be warranties and then there are "express warrant[ies] . . . given in express terms as a part of the contract of sale . . . ." *Smith*, 124 N.W. at 491. Without widely recognized terms for distinguishing between "reliance-created" express warranties and "express" express warranties, it is not surprising that the distinction is not always clearly articulated. But the distinction is nevertheless evident in Wisconsin case law.

Because the *Smith* dicta is in harmony with Wisconsin's embrace of the economic-loss doctrine, with the function of the reliance requirement under Wisconsin law, and with the run of Wisconsin cases on the topic, the Court finds that the *Smith* dicta is an accurate description of Wisconsin law. The Court therefore concludes that, when a party such as Pentair has unquestionably bargained for, and received, an express warranty as a part of a contract, that party need not prove reliance in order to recover for breach of that warranty. To the extent that WEC's summary-judgment motion rests on Pentair's failure to prove reliance, WEC's motion is denied.

## 2. Waiver

WEC next argues that, even if a buyer need not prove reliance in order to recover for breach of warranty, a buyer who proceeds with a transaction with full knowledge of the seller's breach has waived its right to enforce the warranty. *See Hlubocky v. Schramel*, 279 N.W. 637, 639-40 (Wis. 1938) (where buyer knew seller had no legal right to transfer title, buyer could not recover for breach of an implied warranty guaranteeing that seller had legal right to transfer title); *Northfield Nat'l Bank v. Arndt*, 112 N.W. 451, 452 (Wis. 1907) (where defects were patent and buyer knew of them, buyer's failure to notify seller within a reasonable time that the goods were defective precluded buyer from recovering for breach of warranty); *Locke v. Williamson*, 40 Wis. 377, 1876 WL 3928, at *2-3 (1876) (same); *Lambert v. Hein*, 582 N.W.2d 84, 91-92 (Wis. Ct. App. 1998) (buyer waived warranty claims by choosing to close after inspection revealed a defect).

In this case, though, the Agreement contains an express reservation of rights that narrows the circumstances under which either party will be deemed to have waived any of its contractual rights:

> No waiver by any Party of any of the provisions hereof shall be effective unless expressly set forth in writing and executed by the Party so waiving. The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

Agreement § 12.8. Because Pentair has never executed an express written waiver of its warranty rights, Pentair argues that it has the right to enforce its warranties whether or not it knew of WEC's breach before the closing. *See Galli v. Metz*, 973 F.2d 145, 151 (2d Cir. 1992) (a buyer who closes with full knowledge of a breach waives the breach unless the buyer expressly reserves

his rights). WEC disagrees, arguing that § 12.8 is ineffective to preserve Pentair's rights because it refers only generally to waivers of breaches of the Agreement, but does not specifically refer to a waiver of a breach of the warranty regarding Wicor's employee-benefit plans.

WEC cites no Wisconsin cases requiring any particular degree of specificity in a reservation-of-rights clause. The closest WEC comes is *Lambert v. Hein*, 582 N.W.2d 84 (Wis. Ct. App. 1998), a case involving an ambiguous real-estate contract. Under the contract in *Lambert*, the buyer had the right to inspect the property before closing. *Id.* at 90. Because the buyer did not submit a written disapproval of the property after the inspection, the buyer was deemed, under the contract, to have accepted the property "as is." *Id.* At the same time, however, the contract provided that the seller's warranties, set forth in the seller's "condition report," would survive the closing. *Id.* The court had to decide how to reconcile the buyer's acceptance of the property "as is" with the buyer's right to enforce the seller's warranties. *Id.* The court resolved the conflict by holding that the buyer would be deemed to have waived any defects discovered by the inspection unless the buyer specifically reserved his rights with respect to that defect. *Id.* at 91-92.

This Court has no quarrel with the reasoning of *Lambert*. But that reasoning has nothing to do with the facts of this case. *Lambert* involved a contract that contained both a clause that expressly preserved the buyer's warranty rights (the survival clause) and a clause that expressly waived those same rights (the "as is" clause). The *Lambert* court had to find some way of choosing which of the two irreconcilable clauses to enforce. The Agreement in this case presents no such dilemma. The Agreement contains no "as is" clause, nor any other provision that purports to waive any of Pentair's rights. To the contrary, the Agreement is clear that Pentair's

-17-

rights are *not* waived unless the waiver is in writing and signed by Pentair. There is no reason why the reservation-of-rights clause in § 12.8 should not be enforced as written.

Lacking any Wisconsin authority for the proposition that a court should ignore an unambiguous reservation-of-rights clause unless it specifically describes the parties' dispute, WEC urges the Court to compare the clause in the Agreement to the reservation-of-rights clause in *CBS Inc. v. Ziff-Davis Publishing Co.*, 553 N.E.2d 997 (N.Y. 1990). *Ziff-Davis*, like this case, involved the sale of a business. *Id.* at 998. Before the closing, the parties disputed whether the business's financial statements were accurate. *Id.* The buyer wrote a letter to the seller describing the parties' dispute and stating that it agreed to proceed "on a mutual understanding that the decision to close, and the closing, [would] not *constitute a waiver of any rights or defenses*" of the parties. *Id.* at 999 (brackets and emphasis in original). The seller accepted these terms and the parties proceeded with the closing. *Id.*

To the extent that WEC reads *Ziff-Davis* to require parties to describe their disputes with specificity when reserving their rights, WEC reads too much into *Ziff-Davis*. The issue in *Ziff-Davis* was whether the buyer had to plead reliance on the truth of the warranties in order to state a claim for breach of warranty. *Ziff-Davis*, 553 N.E.2d at 998. Although the court described the buyer's conduct in reserving its rights, the court did not address the issue of waiver, much less impose any requirement of specificity. Moreover, the actual language reserving the buyer's rights in *Ziff-Davis* was no more specific than the reservation-of-rights clause in this case. The *Ziff-Davis* parties merely agreed that closing on the transaction would not constitute a waiver of any of the parties' rights. Here, the parties chose to take a slightly different tack by deeming any waiver ineffective unless it met certain conditions. In both cases, though, it is clear that the

-18-

parties contractually agreed that something more than mere knowledge of a possible breach would be necessary to waive a breach.

Finally, even if *Ziff-Davis* and similar cases could be read to impose a requirement of specificity, the Court would decline to follow them.[8]  Requiring each party to a contract to recite, in writing, every point on which it may have knowledge of a possible breach by another party would vastly increase the costs and difficulties of negotiating and drafting contracts.  WEC advances no logical reason why the Wisconsin Supreme Court would impose such a burden on contracting parties.  In most cases, this practice would not make the parties' intentions any clearer, but would create additional disputes over whether the dispute being litigated was the same as one of the possible breaches referred to in the parties' agreement.

The Court therefore enforces the Agreement as written.  The parties agreed that no waiver would be effective unless set forth in writing and signed by the waiving party, and Pentair did not agree in writing to waive its right to enforce WEC's warranty regarding the Wicor employee-benefit plans.  Pentair's possible knowledge of a breach, standing alone, is not effective to waive Pentair's right to enforce § 3.16(f) of the Agreement.  WEC's motion for summary judgment is denied.

---

[8]WEC also highlights *Siemens Solar Industries v. Atlantic Richfield Co.*, 673 N.Y.S.2d 674 (N.Y. App. Div. 1998), a one-page decision in which the court distinguished *Ziff-Davis* on the basis that the warranty in *Ziff-Davis* "expressly warranted an existing specified fact," whereas the provision at issue in *Siemens* only "generally warrants that the representations contained in the agreement . . . do not omit any material facts . . . ." *Id.* at 674.  Whatever the merits of this reasoning with respect to warranties, it has nothing to do with the degree of specificity required in a reservation-of-rights clause.  Moreover, this reasoning is especially inapt in this case, as the warranty at issue here did in fact "expressly warrant[] an existing specified fact"— namely, that "all payments due from [each] Employee Plan/Agreement . . . have been made, and all amounts properly accrued to date as Liabilities that have not been paid have been properly recorded on the books of [Wicor] . . . ." Agreement § 3.16(f).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that defendant's motion for summary judgment [Docket No. 39] is DENIED.

Dated: September 10, 2009    s/Patrick J. Schiltz
                             Patrick J. Schiltz
                             United States District Judge